# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Julie E. Littenberg, also known as Julie E. Raskin, daughter of Donald N. Raskin, deceased, on behalf of herself and all statutory beneficiaries,<br><br>    Plaintiff,<br><br>    vs.<br><br>Sharon L. Raskin, also known as Sherri Raskin, John Does I-V and Jane Does VI-X,<br><br>    Defendants. | 2:15-cv-02135 JWS<br><br>**ORDER AND OPINION**<br><br>[Re: Motion at Docket 5] |

## I. MOTION PRESENTED

At docket 5, Plaintiff Julie Littenberg ("Plaintiff") filed a motion to remand the case back to the Superior Court of Arizona. Defendant Sharon Raskin ("Defendant") responds at docket 11. Plaintiff replies at docket 13. Oral argument was requested, but it would not be of additional assistance to the court.

## II. BACKGROUND

Defendant is the widowed wife of Donald Raskin ("Decedent"). Plaintiff is the daughter of Decedent. Decedent suffered from Amyotrophic Lateral Sclerosis ("ALS"), which limited his mobility, dexterity, and speech capabilities. He died on May 17, 2015

at his residence in San Diego, California, from a gunshot wound.  Plaintiff filed a lawsuit against Defendant in Superior Court of Arizona on June 24, 2015 (Case No. CV2015-007566).  She alleges in the complaint that Defendant was physically, verbally, emotionally, and financially abusive to her husband, which led to his death.  She alleges that Defendant and Decedent's care giver were having an affair at the time and that both were present when he died.  Plaintiff brings a state law claim for wrongful death based on Defendant's negligent and/or intentional actions against a vulnerable adult.

Shortly thereafter, Plaintiff served subpoenas on AT&T to obtain Decedent's text messages from January 1, 2015 through June 1, 2015.  She wanted to make sure that all materials were preserved prior to the timed-destruction by AT&T.  Defendant, through her attorney, filed a Motion to Quash the subpoenas, arguing in part that she had not yet been properly served with the complaint and specifically stating that she was not waiving service of process.  The court denied Defendant's request to quash.  After further unsuccessful attempts to serve Defendant, the court authorized alternative service.  Defendant was therefore officially served on October 9, 2015.  She removed the case to federal court on October 23, 2015, based on diversity of citizenship.  Plaintiff now seeks remand, arguing that the removal was untimely and that the parties are not diverse.

### III.  STANDARD OF REVIEW

Defendant removed the case to federal court pursuant to 28 U.S.C. § 1441(b) based on diversity jurisdiction.  "A motion to remand is the proper procedure for challenging removal."[1]  The removal statute should be strictly construed against removal and any doubts as to the right of removal are to be resolved in favor of remand to the state court.[2]  "The presumption against removal means that 'the defendant always has

---

[1] *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

[2] *Id.*

the burden of establishing removal is proper.'"[3]  That is, the defendant has the burden of proving all jurisdictional facts.[4]

## IV.  DISCUSSION

Plaintiff argues that remand is proper because Defendant's removal was untimely.  She asserts that the removal clock began to run on September 2, 2015, when Defendant's attorney entered an appearance and filed a motion to quash, and not on October 9, 2015 ,when Defendant was actually served with the complaint.  She cites to *Kline v. Kline*,[5] which stated that "[a] party has made a general appearance when he has taken any action, other than objecting to personal jurisdiction, that recognizes the case is pending in court."[6]  However, a review of the motion and the attorney's appearance shows that it was not a general appearance, which would have waived service of process.  Rather, the attorney entered a special appearance for the purpose of asserting that there had not been service of process, and therefore, the subpoenas were premature.  By arguing that Defendant had not been properly served, the attorney was essentially challenging the court's jurisdiction over Defendant.  Therefore, the thirty-day removal deadline did not start until she was officially served.

---

[3]*Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

[4]Defendant cites *Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986), for the proposition that she only has the burden of production, and Plaintiff bears the ultimate burden of proof on her motion to remand.  This is a misreading of *Lew*.  *Lew* did not involve removal and a motion for remand.  The case was originally filed in federal court based on diversity, and Lew, the plaintiff, was the one asserting diversity jurisdiction.  Thus, Lew bore the ultimate burden of proof.  Here, Defendant is the party seeking removal and asserting federal jurisdiction based on diversity.  Therefore, she retains the burden of proof.  Moreover, the burden of production was discussed by the court because there was a presumption at play in favor of an established domicile as against a newly acquired one. The court explained that the defendant had to overcome that initial burden since he was arguing that he had established a new foreign domicile, and thus, could not be subject to diversity jurisdiction.  Here, Defendant is both the party asserting federal jurisdiction and the party seeking to show that she established a new domicile.  She maintains all burdens.

[5]212 P.3d 902 (Ariz. Ct. App. 2009).

[6]*Id.* at 907.

Plaintiff also asks for remand on the basis that the parties lack diversity. Diversity jurisdiction exists when the matter in controversy exceeds the sum or value of $75,000 and the parties are "citizens of different States."[7]  Citizenship is determined by domicile, not simply residency.[8]  Consequently, "[a] person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."[9]  An element of intent is required for domicile: "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."[10]  A person remains domiciled in a location until she establishes a new one.[11]  To change one's domicile "requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely."[12]  Factors that may be considered when determining domicile include "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes."[13]  The relevant time frame for the domicile inquiry is the date when the lawsuit was filed.[14]

Plaintiff contends that Defendant, while residing in California, is still domiciled in Arizona. Defendant argues that she is now domiciled in California. Defendant does not

---

[7] 28 U.S.C. § 1332(a)(1).

[8] *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

[9] *Id.*

[10] *Id.*

[11] *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

[12] *Id.*

[13] *Id.*

[14] *Id.* ("[T]he existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed.").

dispute that prior to 2011 she was domiciled in Arizona. She contends, however, that in 2011 she moved to a condo in San Diego, California, permanently. Plaintiff disputes that Defendant had any intent to relinquish her citizenship in Arizona. In support, Plaintiff provides records to show that Defendant maintains a home in Scottsdale and a home in Flagstaff, has children in Arizona, has a trust set up for her benefit that is governed by Arizona law, pays taxes in Arizona, and actively maintains an Arizona driver's license. Particularly, Plaintiff stresses that in July of 2013, Defendant renewed her Arizona driver's license even though she was residing in California. On the application she listed her physical address as being her home in Scottsdale, Arizona, and her mailing address as her condo in San Diego, California. Defendant states in her affidavit that she has been trying to sell her Flagstaff home for a few years and that she recently listed her Scottsdale home for sale. She argues that she registered to vote in California. The records provided show that she registered on January 22, 2015. She also argues that she paid 2014 taxes in California as well as Arizona, but in support she filed one page of a California tax return that was not signed or dated, and because the date of her husband's death is listed on the return, it is clear that it was prepared sometime after her husband's death in May of 2015.

The court has reviewed the record carefully. The court finds that in 2013, Defendant reasserted her domicile in Arizona when she renewed her driver's license and listed her Scottsdale home as her address. The court must then consider whether at the time the lawsuit was filed, June 24, 2015, Defendant had established a new domicile in California. Looking at the various factors described above, her California residency and her 2015 voter registration weigh in support of California, but the other factors either weigh in support of Arizona or are not applicable. As for her voting practices, she states that she has not voted in Arizona since 2011 but she does not indicate that she has a voting record in California, and, as noted above, she only recently registered to vote in California. She has personal property and two homes in Arizona. She states that she has condos in California and Illinois as well, but even after

buying her California condo, she nonetheless used her Scottsdale address on her driver's license.  She also argues that she is trying to sell her Arizona properties, including her Scottsdale home, but the court must look at where her domicile was as of June 24, 2015, and her affidavit from October 2015 only states that she "recently" put her Scottsdale home up for sale.  As for brokerage or bank accounts, she does not show that she has any in California, and, in contrast, Plaintiff shows that her trust was created in Arizona and governed by Arizona law.  Her spouse is now deceased and buried in Arizona, and her grown children live in Arizona.  There is not much information about her membership in organizations except that she states she has a rabbi and temple in California.  She does not provide any information about employment, but does admit that she is a member of an Arizona limited liability company which generates income for her.  She has an Arizona driver's license that she renewed even after buying a condo in California.  She asserts that she does not have a vehicle registered in Arizona, but Plaintiff provided information to show that she does not have a vehicle registered in California either.  Defendant does not give information about where her vehicles are registered.   She filed income taxes in Arizona.  While she asserts that she filed 2014 income taxes in California as well, the taxes were not prepared until sometime after May 17, 2015, and it is not clear if she had filed those taxes at the time Plaintiff initiated the lawsuit.

      As noted above, a person's domicile is not lost until a new one is acquired, and to acquire a new one there must be facts showing an intention to remain there indefinitely.  While Defendant clearly had a physical presence in California, the facts do not definitively show that she had an intention to remain there indefinitely.  Indeed, even her affidavit states that she may move back to Illinois, where she is originally from. While there are some facts that suggest she might have been trying to establish domicile in California in 2015, there are more facts suggesting that she had not yet relinquished Arizona as her domicile.  Therefore, the court concludes that there is doubt as to whether the parties are really diverse and, as noted above, where questions or

doubt remain as to the propriety of removal, federal jurisdiction should be rejected and the case remanded.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's motion to remand to state court at docket 5 is GRANTED.

DATED this 12th day of January 2016.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE